## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MELISSA ANN MARGIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-cv-463-MPT |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM[1]

Presently before the court are plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2]  Plaintiff requests judgment under sentence four of 42 U.S.C. § 405(g), reversing the Commissioner's final decision and remanding for further administrative proceedings.[3]  For the following reasons, plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted.

## I.    BACKGROUND

This action arises from the denial of Melissa Ann Margis's ("plaintiff") claim for Social Security Disability Insurance ("DIB") benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433.[4]  Plaintiff protectively filed her benefits application

---

[1] Following the parties' consent to proceed before a magistrate judge, this judge was assigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and FED. R. CIV. P. 73 on June 30, 2022.  *See* D.I. 10.

[2] D.I. 11; D.I. 15.  Briefing is found at D.I. 12, D.I. 16, and D.I. 17.

[3] D.I. 12 at 18.

[4] The court refers to the record from the administrative proceeding (D.I. 8) as "Tr."  The record is consecutively paginated and is referred to as "Tr. at ___."

for DIB on February 26, 2019.[5]  She alleged disability beginning October 1, 2017[6] due to the following conditions:  fibromyalgia, depression, extreme anxiety, extreme fatigue, brain fog, and insomnia.[7]  Her claim was denied initially on October 15, 2019, and upon reconsideration on January 23, 2020.[8]  Plaintiff subsequently requested a hearing before an administrative law judge ("ALJ").[9]

The ALJ held a hearing on October 19, 2020, at which she heard testimony from plaintiff and a vocational expert ("VE").[10]  The ALJ issued a decision on January 7, 2021, concluding plaintiff was not under a disability within the meaning of the Act for the relevant period and denying plaintiff's claim for DIB.[11]  The ALJ found that, while plaintiff could not perform her past work, she could perform a limited range of unskilled, light work available in the national economy.[12]

Plaintiff appealed the ALJ's decision to the Appeals Council, which declined to review the decision, making it a final decision reviewable by this court.[13]  Plaintiff filed this action on April 7, 2022.[14]

---

[5] Tr. at 10.

[6] *Id.* at 10, 63, 195.

[7] *Id.* at 63, 195.

[8] *Id.* at 10, 88-92, 94-98.

[9] *Id.* at 10, 99-100.

[10] *Id.* at 35-61.  The hearing was held telephonically "due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic." *Id.* at 10.

[11] *Id.* at 10-23.

[12] *Id.* at 22-23.

[13] *Id.* at 1-6.

[14] D.I. 1.

2

## II.    LEGAL STANDARDS

### A.    Motion for Summary Judgment

In determining the appropriateness of summary judgment, the court must "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the nonmoving party[,]' but [refraining from] weighing the evidence or making credibility determinations."[15]  If no genuine issue as to any material fact exists and the movant is entitled to judgment as a matter of law, summary judgment is appropriate.[16]

This standard does not change merely because there are cross-motions for summary judgment.[17]  Cross-motions for summary judgment:

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.[18]

"The filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party."[19]

### B.    Court's Review of the ALJ's Findings

The Commissioner must follow a five-step sequential analysis when determining if an individual is disabled.[20]  The Commissioner must determine whether the applicant: (1) is engaged in substantial gainful activity; (2) has a "severe" medical impairment; (3)

---

[15] *Reeves v. Sanderson Plumbing, Prods., Inc.*, 530 U.S. 133, 150 (2000).
[16] *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (citing FED. R. CIV. P. 56(c)).
[17] *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987).
[18] *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).
[19] *Krupa v. New Castle Cnty.*, 732 F. Supp. 497, 505 (D. Del. 1990).
[20] 20 C.F.R. § 404.1520.

3

suffers from an impairment that meets a listing; (4) has the residual functional capacity

("RFC") to perform past relevant work; and (5) can perform any other work existing in

significant numbers in the national economy.[21]

The burden of proving disability rests with the claimant.[22]  A reviewing court is

limited to determining whether the Commissioner's factual findings are supported by

"substantial evidence."[23]

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency factfinding.
> Under the substantial-evidence standard, a court looks to an existing
> administrative record and asks whether it contains "sufficien[t] evidence"
> to support the agency's factual determinations.  And whatever the
> meaning of "substantial" in other contexts, the threshold for such
> evidentiary sufficiency is not high. Substantial evidence, this Court has
> said, is "more than a mere scintilla."[24]

In reviewing whether substantial evidence supports the Commissioner's findings, the

court may not "re-weigh the evidence or impose [its] own factual determinations."[25]  The

reviewing court must defer to the ALJ and affirm the Commissioner's decision, even if it

would have decided the factual inquiry differently, so long as substantial evidence

supports the decision.[26]

The reviewing court must also review the ALJ's decision to determine whether

---

[21] *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. § 404.1520).

[22] 20 C.F.R. § 404.1512.

[23] 42 U.S.C. § 405(g).

[24] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988) ("Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

[25] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).

[26] *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

the correct legal standards were applied.[27]  The court's review of legal issues is plenary.[28]

## III.   DISCUSSION

The ALJ found plaintiff had the following severe impairments:  major depressive disorder; persistent depressive disorder with anxious distress; attention deficit hyperactivity disorder ("ADHD"); cervical degenerative disc disease ("DDD"); cervical radiculopathy; and obesity.[29]  The ALJ found plaintiff's hypothyroidism, Reynaud's, and fibromyalgia were not "severe" impairments as defined in the regulations.[30]  The ALJ posed to the VE two base hypothetical questions and several follow up questions.  First, she asked the following hypothetical question to the VE:

> [A]ssume an individual who is able to perform light work, occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. Occasionally balance, stoop, kneel, crouch, crawl, tolerate occasional exposure to extreme heat, extreme cold, humidity, wetness, fumes, odors, dust, gasses, poor ventilation, and vibrations, and who cannot tolerate exposure to hazards, such as moving machinery or unprotected heights. Please assume that the individual can finger, handle, and reach no more than frequently, and is able to perform no more than simple, routine, repetitive tasks, and can tolerate no more than few changes in a routine work setting.  Would such an individual be able to perform the Claimant's past work?[31]

The VE responded the hypothetical person could not.[32]  The ALJ then asked if there would be any jobs that person could perform.[33]  The VE responded such person

---

[27] *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).
[28] *Id.*
[29] Tr. at 12.
[30] *Id.* at 12-13.
[31] *Id.* at 54.
[32] *Id.*
[33] *Id.* at 55.

would be able to perform jobs at the light exertional level including: inspector, general office helper, and router.[34]

> The ALJ posed a second hypothetical question to the VE:
>
> [A]ssume all the limitations I've listed, including the simple, routine, repetitive, and few changes in a routine work setting. . . . [P]lease assume this individual is at the sedentary exertional level. Would such an individual be able to perform the Claimant' s past work?[35]

The VE again responded the hypothetical person could not.[36] The ALJ then asked if there were any other jobs in the national economy that could be consistent with all of the limitations in the second hypothetical.[37] The VE responded such person would be able to perform jobs at the sedentary exertional level including: taper, printed circuit boards, addresser, and final assembler.[38]

> The ALJ then asked the VE:
>
> Thinking about the limitations I've listed in base Hypothetical 1 and base Hypothetical 2, along with the corresponding jobs you listed for each of those two base hypotheticals in the national economy, if in addition to each of those hypotheticals the individual were not able to work at a production pace, so in other words, no assembly line type of work, would that impact your response regarding any of the light or sedentary jobs you've listed in the national economy?[39]

The VE responded that none of the light or sedentary jobs she identified are production paced jobs, but do have productivity requirements.[40]

> Next, the ALJ asked:

---

[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.* at 56.
[38] *Id.*
[39] *Id.*
[40] *Id.* at 57.

> If in addition to the limitations I've listed in each of those two base
> hypotheticals, the individual were able to interact with supervisors and co-
> workers no more than frequently while working in tandem with or directly
> with others no more than occasionally, and . . . interacting with the public
> no more than occasionally.  Would that impact your response regarding
> any of the light or sedentary jobs you've listed in the national economy?[41]

The VE stated that the identified-jobs, "typically do not require any public contact. The

interaction with supervisors and co-workers would not be more than frequent for these

type of jobs.  And these jobs are typically not done in tandem with others.  It would be in

proximity of your co-worker, but not in tandem with."[42]

Finally, the ALJ asked:

> [I]f in addition to the limitations I've listed in each of the two base
> hypotheticals, the individual required the opportunity to move from a
> seated position to a standing position, or vice-a-verse, for up to five
> minutes throughout every hour, remaining on task.  Would that impact
> your response regarding the jobs you've listed at light or sedentary?[43]

The VE confirmed that "[i]f they're changing positions for five minutes every hour, but

remaining on task, the jobs I identified would be available."[44]

Plaintiff's counsel then posed questions to the VE regarding an employer's

tolerance for off task behavior and absences.[45]  The VE responded that either 15% or

more lost productivity, or missing one or more days per month over time, would

preclude employment.[46]

In her decision, the ALJ stated:

---

[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.* at 58.
[46] *Id.*

7

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasionally climb ramps, stairs, ladders, ropes, scaffolds; occasionally balance, stoop, kneel, crouch and crawl; tolerate occasional exposure to extreme heat, extreme cold, humidity, wetness, fumes, odors, dust, gases, poor ventilation, vibrations and hazards such as moving machinery and unprotected heights; can finger, handle and reach no more than frequently; can perform simple, routine, repetitive tasks, and can tolerate few changes in a routine work setting; can interact with co-workers and supervisors frequently, while working in tandem with others occasionally, and can interact with the public occasionally.[47]

\* \* \* \* \*

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.[48]

The ALJ relied upon the VE's assessments in her final determination and concluded, considering plaintiff's age, education, work experience, and RFC, she was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, such as inspector, general office helper, and router.[49]

Plaintiff argues substantial evidence does not support the ALJ's conclusion that she has the capacity to perform light work because the ALJ failed to properly evaluate the medical opinion evidence consistent with Social Security Administration ("SSA") policy and Third Circuit precedent.[50]  She also contends the ALJ's "credibility" finding was generally defective for the same reasons, but also for failing to consider her

---

[47] *Id.* at 14-15.
[48] *Id.* at 18.
[49] *Id.* at 23.
[50] D.I. 12 at 1, 2-16.

exemplary work history.[51]  Plaintiff contends the opinions of her treating medical

professionals Alfred Fletcher, M.D. ("Dr. Fletcher"), Jeffrey Vari, PT, DPT, MBA ("PT

Vari"), and Ranga N. Ram, M.D. ("Dr. Ram")[52] each "(1) describe far greater and more

detailed limitations than are accounted for in the ALJ's RFC finding; and (2) met

Plaintiff's burden to produce evidence establishing that she is 'disabled' pursuant to

SSA's definition."[53]  Plaintiff asserts "the treating and examining opinions are consistent

with and supported by the record, and the ALJ did not reasonably or logically find to the

contrary."[54]

     Defendant asserts substantial evidence supports the ALJ's evaluation of the

medical opinion evidence under the new controlling regulatory scheme, and she

complied with SSA regulations and policy when considering plaintiff's subjective

complaints.[55]

     Plaintiff was treated by Dr. Fletcher, PT Vari, and Dr. Ram during her alleged

period of disability.  Each submitted opinions, *inter alia*, that her physical and/or mental

impairments would prevent her from maintaining full time employment.[56]  If those

opinions were accepted, plaintiff would be disabled.  "[I]t is well established," however,

---

[51] *Id.* at 1-2, 16-18.

[52] Dr. Fletcher is plaintiff's primary care physician, PT Vari is her physical therapist, and Dr. Ram is her treating psychiatrist.  *See id.* at 4, 5, 6.

[53] *Id.* at 4-7.

[54] *Id.* at 7-16.

[55] D.I. 16 at 1, 9-15.

[56] *See* D.I. 12 at 4-6 (citing Tr. at 680-81 (Fletcher opining plaintiff incapable of performing sedentary work for eight hours per day); *id.* at 717, 720-21 (Vari opining plaintiff can perform sedentary work two hours per day, could stand/walk 1-33% of an eight hour shift); *id.* at 675 (Ram opining plaintiff unable to perform simple, repetitive work for forty hours per week without missing more than two days per month, and unable to remain on task at least 80% of the workday)).

that a physician's statements "are not binding on the ALJ, as opinions as to whether a claimant is disabled or unable to work is reserved for the Commissioner of Social Security."[57]  Moreover, "even if the statements from Plaintiff's physicians were to be considered as opinions, they would not be entitled to controlling weight under the relevant regulations.  For cases . . . filed on or after March 27, 2017, the regulations have eliminated the 'treating physician rule.'"[58]

A plaintiff's RFC is her maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.[59]  This contemplates full-time employment and is defined as eight hours a day, five days per week, or another similar schedule.[60]  The RFC assessment must include a discussion of the individual's abilities.[61]  "[T]he ALJ's finding of [RFC] must be accompanied by a clear and satisfactory explanation of the basis on which it rests."[62]

"The record before the ALJ is the touchstone for determining which limitations should be included in an RFC assessment."[63]  "A lack of evidentiary support in the medical record is a legitimate reason for excluding claimed limitations from the RFC."[64] The ALJ must consider all the evidence before her when making her RFC determination and must give some indication of the evidence which she rejects and her reason(s) for

---

[57] *Johnson v. KijaKazi*, C.A. No. 21-1919, 2023 WL 2500367, at *1 n.1 (W.D. Pa. Mar. 14, 2023) (citing 20 C.F.R. § 404.1520b(c)(3)(i)).

[58] *Id.* (citations omitted).

[59] *See Social Security Ruling* ("SSR") 96-8p.

[60] *Id.*

[61] *Id.*; 20 C.F.R. § 404.1545; *Hartranft v. Apfel*, 181 F.3d 358, 59 n.1 (3d Cir. 1999).

[62] *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001).

[63] *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 148 (3d Cir. 2007).

[64] *Id.*

discounting such evidence.[65]

"A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence."[66]  An ALJ does not have to include every alleged impairment, but only "a claimant's credibly established limitations."[67] "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible–the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason."[68]  The ALJ's decision must be accompanied by a clear and satisfactory explanation of the basis on which it rests for this court properly to decide whether the ALJ's decision is based upon substantial evidence.[69]

If a credibly-established limitation is not included within the hypothetical question, there is a danger that the VE will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation.[70]  Remand is required where the hypothetical question is deficient.[71]

The regulations list multiple factors to be considered in evaluating the persuasiveness of that evidence, but emphasize that:

> [t]he factors of supportability . . . and consistency . . . are the most important

---

[65] *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000).
[66] *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).
[67] *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).
[68] *Id.* (internal quotation marks omitted).
[69] *Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981).
[70] *Burns v. Barnhart*, 312 F.3d 113, 122-24 (3d Cir. 2002).
[71] *Rutherford*, 399 F.3d at 554; *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984).

factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.[72]

With regard to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s) the more persuasive the medical opinions or prior administrative medical finding(s) will be."[73]  Turning to consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."[74]  If the ALJ finds multiple medical opinions of the same issue are equally supported and consistent with the record, but not exactly the same, he "will explain how [he] considered the other most important factors in paragraphs (c)(3) through (c)(5),"[75] i.e., relationship with the claimant, specialization, and other factors.[76]

Plaintiff asserts that the ALJ failed to adequately explain her findings as required by 20 C.F.R. § 404.1520c, the statutory scheme for analyzing medical opinion evidence in disability claims filed after March 27, 2017.[77]  Plaintiff argues:

[T]his analysis assumes that, based on the factors of consistency and supportability, *more than one opinion can reasonably be found persuasive, even opinions at odds with each other in their conclusions*.

---

[72] 20 C.F.R. § 404.1520c(b)(2).
[73] 20 C.F.R. § 404.1520c(c)(1).
[74] 20 C.F.R. § 404.1520c(c)(2).
[75] 20 C.F.R. § 404.1520c(b)(3).
[76] 20 C.F.R. §§ 404.1520c(c)(3)-(5).
[77] D.I. 12 at 3.

When this is the case, at the second step the ALJ must consider the "most persuasive factors" of:  "relationship with the claimant" (i.e., treating or examining relationship), "specialization," and "other factors" to, in effect, **"break the tie"** to determine which opinion is most persuasive.[78]

An almost identical argument was recently rejected in this circuit by Judge Alan B. Bloch of the United States District Court for the Western District of Pennsylvania.  As here, the plaintiff argued:  "if the ALJ has found multiple opinions to be persuasive, he or she then *'break[s] the tie'* by applying the factors set forth in Section[] 404.1520c(b)(3) . . . –relationship with the claimant, specialization, and other factors–to determine which of the 'persuasive' opinions is most persuasive."[79]  Judge Bloch rejected this argument and cogently explained:

> In essence, Plaintiff is contending that the ALJ first makes the binary decision of whether an opinion is persuasive or not persuasive by applying the two "most important factors" of supportability and consistency, and then applies the remaining factors to separately "rank" the opinions in the order of persuasiveness.  This is simply not consistent with the language of the regulations.
>
> Section[] 404.1520c(b) . . . provide[s]:  "We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."  ALJs, therefore, do not simply determine *whether* an opinion is persuasive or not, but rather *how* persuasive it is.  This very clearly contemplates a spectrum of persuasiveness and not merely a "thumbs up" or "thumbs down" on whether an opinion is persuasive.  Moreover, section[] 404.1520c(b) . . . expressly state[s] that supportability and consistency "are the most important factors we consider when we determine *how* persuasive we find a medical source's medical opinions or prior administrative medical findings to be."  (emphasis added).  This is not

---

[78] *Id.* (italics in original, bold added) (citing 20 C.F. R. §§ 404.1520(c)(3)-(c)(5); *Knecht v. Saul*, No. 3:19-cv-00759, 2020 U.S. Dist. LEXIS 140481, at *19-20 (M.D. Pa. Aug. 6, 2020) (also describing § 404.1520c as a two-step process)).

[79] *Skirble v Comm'r of Soc. Sec.*, C.A. No. 21-238, 2022 WL 3586668, at *1 n.1 (W.D. Pa. Aug. 22, 2022) (emphasis added).

to say that the remaining factors are not relevant, but simply that they are secondary to supportability and consistency.  In the event that two or more opinions regarding the same issue are "equally" well-supported and consistent with the record, then a more focused analysis of the remaining factors is warranted.  *Id.* at §[] 404.1520c(b)(3) . . . .  Again, the regulations do not state that if two or more opinions are supported and consistent with the record that this additional analysis will be triggered, but only if they are **equally** supported and consistent.  This, again, clearly contemplates that ALJs can and will find opinions to be of varying degrees of persuasive in applying Section[] 404.1520c(b)(2) . . . .[80]

Here, the ALJ carefully considered the record evidence, including plaintiff's

------------------------

[80] *Id.* (underlining added, bold in original).  The analysis in *Skirble* is not contradicted by the *Knecht* opinion cited by plaintiff as support for his two-step "break the tie" argument.  *See Knecht*, 2020 U.S. Dist. LEXIS 140481, at *19-20 ("The ALJ *must explain* in his . . . decision how persuasive he . . . finds a medical opinion based on [supportability and consistency].  20 C.F.R. § 404.1520c(c)(1)-(5).  The ALJ *may, but is not required, to explain* how he considered the remaining factors, *unless* the ALJ finds that two or more medical opinions about the same issues are *both equally well-supported and consistent with the record*, but not identical. 20 C.F.R. § 404.1520c(b)(3)." (emphasis added)).

Many courts in this, and other, circuits have similarly found consideration of supportability and consistency of medical opinions are the only factors an ALJ *must* address.  *See*, *e.g.*, *Moberg v. Comm'r of Soc. Sec.*, No. 6:19-CV-891-ORL-LRH, 2020 WL 4936981, at *3 (M.D. Fla. Aug. 24, 2020) ("Pursuant to the new regulations, the Commissioner is not required to articulate how he 'considered each medical opinion or prior administrative medical finding from one medical source individually.'  20 C.F.R. § 404.1520c(b)(1).  Courts have found that '[o]ther than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness.' *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citing *Mudge v. Saul*, No. 4:18CV693CDP, 2019 WL 3412616, *4 (E.D. Mo. July 29, 2019).).  *See also Knecht*, 2020 WL 4530725, at *7 . . . ; *Stem v. Comm'r of Soc. Sec.*, No. CV 2:19-725, 2020 WL 4548056, at *2 n.1 (W.D. Pa. Aug. 6, 2020) (citations omitted) ('Consistency and supportability are the only factors ALJs must address in their written opinions.')."); *Smith v. Kijakazi*, CASE NO. 2:20-cv-762-JTA, 2022 WL 3927818, at *3 (Aug. 31, 2022) (citing *Moberg*, 2020 WL 4936981, at *3).  This court recently followed this line of cases, in part, to reject the same argument made by Margis's counsel in a separate disability matter.  *See Brown v. Kijakazi*, C.A. No. 22-cv-1022-MPT, 2023 WL 2572240 (D. Del. Mar. 20, 2023).

14

subjective complaints, as well as and the treatment, medical records, and opinions of her treating medical professionals and consultative examiners.  She thoughtfully explained how plaintiff's reasonably supported limitations were accounted for in her RFC, and the reasons plaintiff's allegedly greater disabling limitations were rejected.

Plaintiff alleged disability beginning October 1, 2017 "based on progressively worsening pain and anxiety."[81]  The ALJ noted her testimony of feeling lonely and isolated, the side effects of her medication (including weight gain, blisters, memory problems, drowsiness, and suicidal thoughts), and of suffering insomnia and continuous use of heat or ice packs for pain.[82]

The ALJ found plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]"[83]  She determined, however, that "plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"[84]

The ALJ found the record reflected no significant changes in plaintiff's physical or mental impairments around her stated October 17, 2021 onset date, but noted she stopped working because her employer closed its Delaware facility in 2017.[85]  The ALJ

---

[81] Tr. at 15.
[82] *Id.* at 13-15.
[83] *Id.* at 18.
[84] *Id.*
[85] *Id.* (citing *id.*, Ex. 7F).  The court rejects plaintiff's argument that the ALJ's credibility determination was deficient for purportedly neglecting to consider plaintiff's work history.  The ALJ noted plaintiff stopped working in 2017 because her employer closed its Delaware office, and that there was no evidence of changes to plaintiff's impairments coincident with the end of her employment.  This court has affirmed an ALJ's decision where a disability claimant with an extensive work history was laid off.

found evidence from Dr. Ram and a consultative examination regarding plaintiff's understanding, remembering, or applying information as supporting no more than a mild limitation.[86]  Psychotherapy records supported the ALJ's determination that her interaction with others is moderately limited.[87]  Plaintiff's concentration, persisting, or maintaining pace were moderately limited based on the ALJ's consideration of her testimony that she has difficulty concentrating, her ADHD diagnosis, and consultative examination.[88]  The ALJ found plaintiff only mildly limited with regard to adapting or managing herself based on her reporting at a consultative examination that she dresses and bathes without assistance, drove to the exam, and occasionally shops, does laundry and washes dishes.[89]

The ALJ also found the medical records do not support plaintiff's alleged degree of functional limitation.  She separately discussed the record describing plaintiff's depression and ADHD, and her cervical DDD, cervical radiculopathy, and obesity.[90]

The ALJ found plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms[] . . . inconsistent with the evidence of record."[91]  The record

---

*See Milliman v. Berryhill*, No. CV 16-1279-LPS-MPT, 2017 WL 3912830, at *14 (D. Del. Sept. 7, 2017), *report and recommendation adopted*, No. CV 16-1279-LPS-MPT, 2018 WL 259317 (D. Del. Jan. 2, 2018) (affirming the ALJ's decision where "despite plaintiff's extensive work history, his employment ended because of a lay-off, indicating that he may have stopped working for reasons other than his impairments").  The court notes plaintiff did not reprise her extensive work-history argument in her reply brief.  She instead rested on her opening brief arguments on this topic.  *See* D.I. 17 at 6.

[86] Tr. at 13-14 (citing *id.*, Exs. 18E/4, 5F/87-88, 5F/114, 7F).

[87] *Id.* at 14 (citing *id.*, Exs. 5F/102, 7F).

[88] *Id.* (citing *id.*, Exs. 18E, 7F, 5F/97).

[89] *Id.* (citing *id.*, Exs. 16E, 7F).

[90] *Id.* at 16-18.

[91] *Id.* at 18.

noted no changes around the time of her leaving Barclay's Bank, with mental health treatment remaining "stable and limited to outpatient psychotherapy and medication management, with no recommendations for more intensive or inpatient treatment."[92] The ALJ limited plaintiff to "no more than simple, routine, repetitive tasks, and . . . tolerat[ing]  no more than few changes in a routine work setting" after considering her depression and ADHD diagnoses with "observations of fair short-term memory, fair attention and concentration, and reports of ongoing depression, anxiety, and increased symptoms secondary to stress."[93]

With regard to physical impairments, the ALJ recognized plaintiff's history of neck pain secondary to automobile accidents prior to her onset dates, and reported that treatment of cervical DDD with radiculopathy "remained conservative in nature and limited to injections, medication, and chiropractic care."[94]  In contrast to plaintiff's testimony that she suffers from insomnia, her most recent rheumatology visits reflected "no complaints of fatigue, insomnia, back pain, joint pain, joint stiffness, or joint swelling," and that "she maintains normal neck range of motion, normal gait, and normal sensory and motor exam findings."[95]  The ALJ accounted for the objective evidence of plaintiff's cervical DDD and radiculopathy, as well as the potential impact of obesity, by limiting her to "work at a light level of exertion with occasional postural activities, frequent fingering, handling, and reaching, and additional environmental restrictions."[96]

---

[92] *Id.* (citing *id.*, Exs. 5F, 12F, 21F, 31F).

[93] *Id.*

[94] *Id.* at 19 (citing *id.*, Exs. 3F/22, l0F/4-5, 19F).

[95] *Id.* (citing *id.*, Ex. 17F/4-8).

[96] *Id.*

Lastly, the ALJ discussed the medical opinions and prior administrative findings by first discussing plaintiff's mental impairments.  Dr. Ram opined that plaintiff could not perform simple, routine, repetitive work forty hours per week without missing two of more days a month, her inability to remain on task 80% of a workday, and that she has a moderate severe to severe degree of impairments in all areas.[97]  The ALJ found Dr. Ram's opinions were not persuasive because there were not supported by his treatment notes.  Those notes do not show a significant change in mental health symptoms or limitations as of the alleged onset date; instead, they show plaintiff's continued management with outpatient psychotherapy and medication.[98]  Dr. Ram's opinions were also found inconsistent with the consultative examination and prior administrative medical findings which recorded plaintiff having fair attention, concentration, and short-term memory, and dysthymic mood, but she was able to make good eye contact, having good memory for immediate material, and denial of any difficulties getting along well with others.[99]  Additionally, plaintiff continues to drive, shop, and perform some household chores.[100]

In contrast, ALJ found persuasive the opinion of the consultative examiner that plaintiff was moderately impaired as to "restriction of daily activities, deterioration of personal habits, ability to carry out instructions under ordinary supervision, cope with pressures of ordinary work, and perform routine, repetitive tasks under ordinary

---

[97] *Id.* (citing *id.*, Exs. 13F, 22F).
[98] *Id.* (citing *id.*, Exs. 5F/87-88, 5F, 12F, 21F, 31F).
[99] *Id.* (citing *id.*, Ex. F).
[100] *Id.* (citing *id.*, Ex. 7F).

supervision."[101]  That degree of impairment was supported by the exam findings listed above, including good eye contact, fair attention, concentration, *inter alia*.[102]  A State agency psychological consultant's findings, subsequently affirmed by another consultant, that plaintiff was only moderately limited in her ability to maintain attention and concentration for extended periods was also determined by the ALJ to be persuasive.[103]  The consultative examiner reported plaintiff as having "fair attention, concentration, and short-term memory, and . . . [to be] capable of interacting appropriately with others, performing simple tasks, and avoiding hazards at work."[104]  The ALJ determined those findings were supported by explanation and consistent with the medical evidence of record.[105]

Turning to plaintiff's physical impairments, the ALJ found Dr. Fletcher's opinion that plaintiff's back and neck pain limiting her to standing twenty minutes at one time and three hours total, and sitting for twenty minutes at one time and three to four hours total, precluded her from working eight hours per day at sedentary or light exertional level not persuasive as unsupported by his own reports.[106]  Specifically, the ALJ noted that on December 11, 2018, Dr. Fletcher noted neck inspection with only mild tenderness, and no gross motor or sensory deficits, and that in August 2019 Fletcher's

---

[101] *Id.* at 19-20 (citing *id.*, Ex. 7F/5-6).

[102] *Id.* at 20 (citing *id.*, Ex. 7F/3).  The ALJ determined the medical evidence of record did *not* support the assessment of moderately severe impairment or limiting plaintiff to simple work related decisions, based on limited mental health treatment and findings of relative stability during the period at issue.  *Id.* (citing *id.*, Ex. 21F/39).

[103] *Id.* (citing *id.*, Exs. 2A, 4A).

[104] *Id.* (citing *id.*, Ex. 7F/4).

[105] *Id.* (citing *id.*, Exs. 5F/97, 5F/103-04).

[106] *Id.* (citing *id.*, Ex. 14F).

notes did not mention any fatigue or tender "trigger points" that had been reflected in notes from and  intervening appointment.[107]  The ALJ also pointed out more recent rheumatology records observed normal neck range of motion, gait, and sensory exam; as well as grossly intact motor exam.[108]

The ALJ also rejected as not persuasive PT Vari's opinion that plaintiff lacks the physical ability to work in most sedentary occupations because she could only perform sedentary work for two hours.[109]  Dr. Fletcher rheumatologist Sheerin Javed, MD. reviewed the report and agreed to the functional status.[110] The ALJ rejected PT Vari's opinion as unsupported and inconsistent with the more recent rheumatology reports referenced with respect to Dr. Fletcher's opinion.[111]

The ALJ concluded her RFC for plaintiff accurately reflected plaintiff's ability to perform work-related activities based on support from "the objective evidence of cervical [DDD] and radiculopathy managed conservatively, the potential impact of obesity, and mental health symptoms that have remained stable with ongoing outpatient treatment."[112]

The court agrees and finds the ALJ's RFC is supported by substantial evidence.

---

[107] *Id.* (citing *id.*, Exs. 20F/47, 20F/34, 20F/27).
[108] *Id.* at 21 (citing *id.*, Ex. 17F7/4-8).  The ALJ also rejected other non-treating medical opinions that suggested *less restrictive* limitations than the RFC she found the record supported.  *See id.* (finding the medical evidence of record supported more restrictive and postural limitations than suggested by consultative examiner Izzy Pines, D.O.), *id.* (rejecting opinions of Joseph Michel, M.D. and Darrin Campo, M.D. finding "no severe physical impairments," and "capable of work at a medium level of exertion," respectively).
[109] *Id.* (citing *id.*, Ex. 15F/7).
[110] *Id.* (citing *id.*, Exs. 16F, 18F).
[111] *Id.* (citing *id.*, Ex. 17F/4-8).
[112] *Id.*

Also, because the ALJ found the opinions of Dr. Fletcher, PT Vari,  and Dr. Ram *were not* persuasive, much less *equally* persuasive as those of the consultative examiners, she was not required to consider the additional factors listed in 20 C.F.R. §§ 404.1520c(c)(3)-(5) as plaintiff suggests.  Plaintiff accuses the ALJ of focusing on a limited portion of the evidence when she found those opinions unpersuasive.[113] Although the ALJ's discussion of plaintiff's treatment notes is not as extensive as that set forth in plaintiff's briefing, the Third Circuit has not required the ALJ to "make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records," so long as the reviewing court can discern the basis of the decision.[114]  Here, the court finds the basis of the ALJ's determination with regard to the notes of plaintiff's treating medical professionals is discernable.

Viewing the record as a whole, the court finds the ALJ applied the correct legal standards and that her decision is reasonable and supported by substantial evidence.

## IV.   CONCLUSION

Therefore, plaintiff's motion for summary judgment (D.I. 11) is DENIED, and defendant's cross-motion for summary judgment (D.I. 15) is GRANTED.

---

[113] *See*, *e.g.*, D.I. 12 at 9 (For Dr. Fletcher, the ALJ cited to a mostly normal exam.); *id.* at 10 (For PT Vari, the ALJ focused on a single, normal exam.); *id.* at 12 (For Dr. Ram, the ALJ used a "highly selective description of [another doctor's] examination results.").

[114] *See Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001); *See also*, *e.g.*, *Robinson v. Colvin*, 137 F. Supp. 3d 630, 645 (D. Del. 2015) (An ALJ's failure to cite specific evidence does not establish that the ALJ failed to consider it.) (citing *Black v. Apfel*, 143 F. 3d 383, 386 (8th Cir. 1998)); *Phillips v. Barnhart*, 91 F. App'x 775, 280 n.7 (3d Cir. 2004) ("[W]ritten evaluation of every piece of evidence is not required," so long as the ALJ, at some minimum level, articulates her analysis of particular evidence.).

March 30, 2023                          /s/  Mary Pat Thynge
                                 CHIEF U.S. MAGISTRATE JUDGE